UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
RYAN O'DELL,                                         :
                                                     :
       Plaintiff,                                 : Civil Action No. 23-cv-3688
                                                     :
v.                                                   : **COMPLAINT FOR VIOLATIONS OF**
                                                     : **SECTIONS 14(a) AND 20(a) OF THE**
CVENT HOLDING CORP., REGGIE                          : **SECURITIES EXCHANGE ACT OF**
AGGARWAL, DAVID BREACH, JIM                          : **1934**
FRANKOLA, BETTY HUNG, MARCELA                        :
MARTIN, SAM PAYTON, MONTI                            : **JURY TRIAL DEMANDED**
SAROYA, and NICOLAS STAHL,                           :
                                                     :
       Defendants.                                :
---------------------------------------------------------  :

       Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

       1.      This is an action brought by Plaintiff against Cvent Holding Corp. ("Cvent or the "Company") and the members Cvent's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Cvent by affiliates of Blackstone, Inc. ("Blackstone").

       2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 21, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Capstone Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Capstone Borrower, Inc. ("Parent"), will merge with and into Cvent, with Cvent surviving the merger as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 14, 2023 (the "Merger Agreement"), each Cvent stockholder will receive $8.50 in cash (the "Merger Consideration") for each Cvent share owned. Merger Sub and Parent are both affiliates of funds managed by affiliates of Blackstone.

3.  As discussed below, Defendants have asked Cvent's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") and J.P. Morgan Securities LLC ("J.P. Morgan" and together with Qatalyst, the "Financial Advisors") in support of their fairness opinions.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cvent's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Cvent stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Reggie Aggarwal has served as a member of the Board since September 1999 and is the Company's Chief Executive Officer.

11. Individual Defendant David Breach has served as a member of the Board since December 2021.

12. Individual Defendant Jim Frankola has served as a member of the Board since December 2021.

13. Individual Defendant Betty Hung has served as a member of the Board since November 2016.

14. Individual Defendant Marcela Martin has served as a member of the Board since December 2021.

15. Individual Defendant Sam Payton has served as a member of the Board since December 2021.

16. Individual Defendant Monti Saroya has served as a member of the Board since November 2016 and is the Chair of the Board.

17. Individual Defendant Nicolas Stahl has served as a member of the Board since May 2019.

18. Defendant Cvent is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 1765 Greensboro Station Place, 7th Floor, Tyson, Virginia 22102. The Company's stock trades on the NASDAQ Global Select Market under the symbol "CVT."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Cvent provides a cloud-based enterprise event marketing, management, and hospitality platform for marketers, meeting, and event planners in North America and internationally. It offers Event Cloud solutions consists of event marketing and management solutions that enables marketers and planners to maximize engagement and ROI from their virtual in-person or hybrid events. The Company also provides Hospitality Cloud solutions provides hotels, venues, and destinations with online marketing solutions for marketing their events business to planners; and software solutions that automate the events sales cycle and enhancing collaboration with planners to design and manage events. In addition, it offers hospitality cloud

online marketing solutions, which enables suppliers to advertise and market on venue sourcing networks, including CSN, SpeedRFP.com, and Wedding-Spot.com; hospitality cloud software solutions, such as hotels, destinations, and venues software solutions to automate and enhance how they sell and execute events; and network effect. The Company sells its platform primarily through a direct inside sales team. Cvent was founded in 1999 and is headquartered in Tysons, Virginia.

22. On March 14, 2023, the Company announced the Proposed Transaction:

> **Tysons, Va. – March 14, 2023 –** Cvent Holding Corp. ("Cvent") (Nasdaq: CVT), an industry-leading meetings, events and hospitality technology provider, today announced that it has entered into a definitive agreement to be acquired by an affiliate of private equity funds managed by Blackstone ("Blackstone") in a transaction valued at an enterprise value of approximately $4.6 billion.
>
> Under the terms of the agreement, Cvent stockholders will receive $8.50 per share in cash, representing a premium of 52 percent to the volume weighted average share price over the 90 days prior to January 30, 2023 – the day before media reports of a potential transaction were published. A wholly owned subsidiary of the Abu Dhabi Investment Authority (ADIA) will be a significant minority investor alongside Blackstone as part of the transaction.
>
> Cvent's comprehensive suite of technology solutions powers the entire event management process to maximize the impact of events. Cvent has approximately 22,000 customers globally in the corporate, non-profit, higher education and hospitality sectors as of December 31, 2022. Since its founding in 1999, Cvent has helped manage more than 5 million events, and lists over 302,000 hotels and venues as of December 31, 2022 on the Cvent Supplier Network, an online platform with tools to search, negotiate and contract with hotels and venues for event space.
>
> "We are excited to share this announcement and look forward to our next chapter alongside the Blackstone team," said Reggie Aggarwal, founder and CEO of Cvent. "As one of the world's largest private equity firms, Blackstone brings deep expertise in the event and hospitality industry, and with their backing, we plan to continue to invest in our business and deliver the innovative solutions that meet

our customers' needs and power the meetings and events ecosystem."

David Schwartz, a Senior Managing Director at Blackstone, said: "The continued events and travel recovery is one of Blackstone's highest-conviction investment themes. Given our extensive experience in the hospitality, events and real estate sectors, we believe Blackstone is well positioned as a growth partner for this exceptional business."

Martin Brand, Head of North America Private Equity and Global Co-Head of Technology Investing at Blackstone, added: "Cvent is an industry leader and we are excited to partner with their management team to continue the firm's innovation and deliver world-class technology solutions to customers in the event and hospitality space."

In connection with the transaction, [Vista Equity Partners](#) ("Vista"), a leading global investment firm focused exclusively on enterprise software, data and technology-enabled businesses, and majority stockholder of Cvent, has agreed to invest a portion of its proceeds as non-convertible preferred stock in financing for the transaction.

"Since Vista first invested, Cvent has undertaken considerable business transformation and has been a testament to how we partner with founders like Reggie to help their businesses scale and thrive," said Monti Saroya, Chairman of the Cvent Board of Directors, Co-Head of the Vista Flagship Fund and Senior Managing Director. "The newly digitized events landscape, coupled with Cvent's strong existing customer base and commitment to innovation, has provided a new growth vector in a post-COVID world. We look forward to seeing the company continue to execute on the opportunities ahead of it."

**Certain Terms, Approvals and Timing**

Following the recommendation of a special committee composed entirely of independent and disinterested directors, the Cvent Board of Directors unanimously approved the merger agreement. The transaction is expected to close mid-year 2023, subject to the satisfaction of customary closing conditions, including receipt of approval by Cvent's stockholders and required regulatory approvals. Upon completion of the transaction, Cvent's common stock will no longer be publicly listed, and Cvent will become a privately held company.

> Blackstone has received a fully committed $1.0 billion credit facility as part of the financing of this transaction.
>
> **Advisors**
>
> Qatalyst Partners is acting as financial advisor to Cvent, and Kirkland & Ellis LLP is acting as legal counsel to Cvent.
>
> J.P. Morgan Securities LLC is acting as financial advisor to the Special Committee, and Goodwin Procter LLP is acting as legal counsel to the Special Committee.
>
> Simpson Thacher & Bartlett LLP is acting as legal counsel to Blackstone, and Evercore, Morgan Stanley & Co. LLC and UBS are acting as financial advisors to Blackstone.

\* \* \*

23. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Cvent's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

24. On April 21, 2023, Cvent filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Cvent management and relied upon the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of the fairness opinions, that the Company prepared certain non-public financial forecasts, the December Projections, the Supplemental Free Cash Flow Projections, the January Projections, the Updated Free Flow Projections, and the February Projections (collectively, the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cvent management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates,

also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Qatalyst's Financial Analyses*

30.     With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of the Company; (ii) the inputs and assumptions underlying the selected range of multiples of fully diluted enterprise value to next-12-months' estimated UFCF of 16.0x to 24.0x; (iii) the inputs and assumptions underlying the discount rates

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

ranging from 12.0% to 15.0%; (iv) the weighted cost of capital of the Company; and (v) the number of shares of Company stock outstanding on a fully diluted basis as of March 10, 2023.

31. With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Qatalyst for the analysis based on the Analyst Projections as referenced in the Proxy Statement, including Analyst Projections for the Company; and (ii) the basis for selecting the representative CY2023E revenue multiple range of 4.0x to 6.5x.

32. With respect to Qatalyst's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Qatalyst for the analysis based on the Analyst Projections as referenced in the Proxy Statement; (ii) the basis for selecting the representative LTM revenue multiple range of 6.3x to 9.9x and NTM revenue multiple range of 5.3x to 8.4x.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analyses*

33. With respect to J.P. Morgan's *Trading Multiples* analysis, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by J.P. Morgan for the analysis; and (ii) the basis for selecting the FV/2023E revenue multiple reference range of 3.3x to 5.8x and a FV/2024E revenue multiple reference range of 2.9x to 4.9x.

34. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by J.P. Morgan for the analysis; (ii) the basis for selecting the NTM revenue multiple reference range of 4.0x to 8.5x.

35. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of the Company; (ii) the inputs and assumptions underlying the terminal growth rates ranging from 4.5% to 5.5%; (iii) the inputs and assumptions

underlying the discount rates ranging from 11.0% to 12.0%; (iv) the weighted cost of capital of the Company; and (v) the number of shares of Company stock outstanding on a fully diluted basis.

36. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the five equity research analysts observed; and (ii) the price targets published by the equity research analysts.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

11

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Cvent within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Cvent, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cvent, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cvent, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 21, 2023        **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
   Gloria Kui Melwani (GM5661)
   1180 Avenue of the Americas, 8th Fl.
   New York, NY 10036
   Telephone: (212) 382-4620
   Email: gloria@melwanichan.com

   *Attorneys for Plaintiff*